UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAROL PLESS,

                                   Plaintiff,

v.

                                                           01-CV-0792(Sr)

CLEVELAND WRECKING COMPANY,

                                  Defendant.                      ORDER

-------------------------------------

CLEVELAND WRECKING COMPANY,

              Third-Party Plaintiff,

v.

EMPIRE DEMOLITION AND DEVELOPMENT,

              Third-Party Defendant.

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #33.

Currently before the Court are motions for summary judgment brought by defendant/third-party plaintiff Cleveland Wrecking Company ("Cleveland Wrecking"), and third-party defendant Empire Demolition & Development, Inc.  ("Empire Demolition").  Dkt. ##96, 100.  Cleveland Wrecking seeks to reform the effective date of the Subcontract Agreement between the parties and to obtain indemnification from Empire Demolition.  Dkt. #96.  Empire Demolition seeks dismissal of the third-party complaint on the grounds that the indemnification provision of the Subcontract Agreement cannot be applied to an accident which preceded the effective date of the contract and that common law indemnification is not asserted in the third-party

complaint and, in any event, is precluded by the worker's compensation law. Dkt. #100. For the following reasons, Cleveland Wrecking's motion is denied and Empire Demolition's motion is granted in part and denied in part.

## **BACKGROUND**

Cleveland Wrecking retained Empire Demolition to demolish an exterior wall at a construction site located at the Erie County Medical Center ("ECMC"). Dkt. ##102 & 111, ¶ 7. This was the first and only time that Empire Demolition has subcontracted with Cleveland Wrecking. Dkt. #100, Exh. I, pp. 67-68, 80. A proposal/contract from Salvatore Capizzi, President of Empire Demolition, to Cleveland Wrecking, dated September 23, 1999, states:

> As per 9/23/99 meeting, it was agreed by Sal Capizzi of Empire Demolition . . . and Sam DeFranks of Cleveland Wrecking the following:
>
> Empire is responsible for the removal of entire five (5) story masonry bearing wall.
>
> Empire will provide all labor and materials.
>
> Cleveland will supply man lift, compressor and jack hammers.
>
> All debris is to be left on site.
>
> Total . . . . . . . . . .$7,250.00[1]

---

[1] An invoice from Empire Demolition to Cleveland Wrecking, dated October 28, 1999, replaces the total contained in the September 23, 1999 proposal/contract with the following:

> Original Contract . . . . . . . . . $7,250.00
> *Deduction of 50% . . . . . . . –3,625.00
> Total Due . . . . . . . . . . . . . . .$3,625.00

* Decision was made by both parties to keep a portion of bearing wall (1st to 3rd floors) intact after determining that removal of this section would pose a hazard if stated work were to be completed.

Dkt. #100, Exh. P.

Dkt. #100, Exh. J, Att. A.  Empire Demolition also proffered two change orders dated October 12, 1999 and October 18, 1999 adding a total of $3,495.00 for the removal of the roof and dismantling of structural I-beams on the fifth floor, and $3,380.00 for the demolition of the third floor right side and left side walls using a step down method. Dkt. #109, Exh. D.  Change Order #1 was signed by Cleveland Wrecking's Site Manager on October 28, 1999.  Dkt. #109, Exh. D.

Prior to commencement of the work, Empire Demolition provided Cleveland Wrecking with a certificate of insurance dated October 7, 1999, which lists Cleveland Wrecking as a certificate holder.  Dkt. #100, Exh. S; Dkt. ##102 & 111, ¶ 8. Samuel DeFranks, the Regional Manager for Cleveland Wrecking, telephoned the insurance company to verify the validity of the certificate of insurance before allowing Empire Demolition to commence work.  Dkt. ##98 & 108, ¶ 3; Dkt. #100, Exh. H, pp.7, 41; Dkt. ##102 & 111, ¶¶ 10 & 14.  The insurance policy contains an "Automatic Additional Insureds" endorsement which defines an insured to include any entity Empire Demolition was "required in a written contract . . . to name as an insured."  Dkt. #96, Exh. K; Dkt. ##98 & 108, ¶ 8.

Plaintiff Carol Pless commenced the underlying action against Cleveland Wrecking alleging that she injured her back on the morning of October 11, 1999 when she slipped on a makeshift walkway she was constructing in the course of her employment with Empire Demolition.  Dkt. #87, ¶¶ 5, 7; Dkt. ##102 & 111, ¶¶ 1-2. Cleveland Wrecking and Empire Demolition agree that Mr. Capizzi made the decision to build the walkway and that Cleveland Wrecking did not exercise supervision or control over Ms. Pless or any other employees of Empire Demolition.  Dkt. ##98 & 108, ¶ 6.

Cleveland Wrecking commenced this third-party action against Empire Demolition seeking indemnification, reformation of a Subcontract Agreement, and damages in the event that Empire Demolition failed to procure insurance as required by the Subcontract Agreement. Dkt. ##102 & 111, ¶ 3. The Subcontract Agreement states that:

> The period of performance of this subcontract agreement shall commence on October 27, 1999 and continue until [Cleveland Wrecking] terminates this agreement in writing, delivered via "Certified" mail.
>
> Agreement for Services. Subcontractor shall furnish all material, supplies, and equipment and perform the work and services (the "Work") as described with a signed Work Order by both parties.

Dkt. #96, Exh. B. The Subcontract Agreement was signed by Mr. Capizzi on October 28, 1999 and by Jim Sheridan, President of Cleveland Wrecking, on November 2, 1999. Dkt. #96, Exh. B. A Subcontract Work Order dated November 2, 1999 was signed by Empire Demolition on November 3, 1999 and Cleveland Wrecking on November 5, 1999. Dkt. #109, Exh. B. The parties agree that Empire Demolition completed the work before receiving the Subcontract Agreement. Dkt. ##98 & 108, ¶ 3.

The Subcontract Agreement includes an indemnification provision requiring Empire Demolition to indemnify, defend and hold Cleveland Wrecking harmless from any and all suits, including injury to Empire Demolition's employees and regardless of any immunity or limitation of liability otherwise afforded Empire Demolition pursuant to any worker's compensation act. Dkt. #96, Exh. B, ¶ 13. Empire Demolition was also required to maintain minimum amounts of insurance coverage and

> before commencing work under ths SUBCONTRACT, furnish to CONTRACTOR certificates of insurance with policy effective dates and, except for worker's compensation, naming CONTRACTOR as an additional insured . . . . Insurance certificates shall further indicate that

>> coverage includes contractual liability applicable to the indemnity provision of this SUBCONTRACT and the amount of all related deductibles other than auto.

Dkt. #96, Exh. B, ¶ 18.

Mr. DeFranks testified at his deposition that he provided Mr. Capizzi with a specimen of Cleveland Wrecking's standard Subcontract Agreement, which included the insurance and indemnification language, during the initial negotiations with respect to this project and that he specifically reviewed with him the insurance provision in paragraph eighteen of the Subcontract Agreement and was assured by Mr. Capizzi that the amount of insurance required would not be a problem.  Dkt. #100, Exh. H, pp.15-18, 39-40.  Mr. Capizzi denies receiving a blank copy of the Subcontract Agreement and denies any discussion of or agreement to add Cleveland Wrecking as an additional insured or to indemnify Cleveland Wrecking at any time prior to receipt of the Subcontract Agreement.  Dkt. #100, Exh. I, p.73 & Exh. J, ¶ 11.  Mr. Capizzi affirms that he signed the Subcontract Agreement with the understanding that it was an administrative requirement which needed to be completed before he could be paid and because he believed that the performance date of October 27, 1999 inserted by Cleveland Wrecking would not obligate him to indemnify Cleveland Wrecking retroactively.  Dkt. #100, Exh. J, ¶ 13.  The letter accompanying the Subcontract Agreement, which is also dated October 27, 1999, states that two copies of the Subcontract Agreement must be signed and returned and that payment will not be processed until all insurance certificates were on file at Cleveland Wrecking's corporate office.  Dkt. #100, Exh. Q.

## DISCUSSION AND ANALYSIS

**Reformation & Contractual Indemnification**

Cleveland Wrecking argues that the commencement date for the performance of the contract should be reformed to reflect the date when Empire Demolition began the ECMC project. Dkt. #97, p.2. Empire Demolition responds that Cleveland Wrecking has failed to demonstrate, by clear and convincing evidence, that Empire Demolition agreed to indemnify Cleveland Wrecking prior to the execution of the Subcontract Agreement on October 28, 1999. Dkt. #101, pp.5-10.

New York[2] permits reformation of a contract where a writing does not set forth the actual agreement of the parties due to mutual mistake or fraudulently induced unilateral mistake. *George Backer Mgmt. Corp. v. Acme Quilting Co., Inc.*, 46 N.Y.2d 211, 218-19 (1978). In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (1986). "In a case of fraud, the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement." *Id.* Reformation will be granted when it is established "not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *Chimart*, 66 N.Y.2d at 574, *quoting Backer*, 46 N.Y.2d at 219; *cf. Flores v. Lower East Side Serv. Ctr.*, 4 N.Y.3d 363, (2005) ("an unsigned contract [containing an indemnification clause] may be enforceable, provided there is objective evidence establishing that the parties intended to be bound"); *Podhaskie v. Seventh Chelsea Assocs.,* 3 A.D.3d 361, 362-63 (1st Dep't 2004) ("an indemnification clause in a written

---

[2] The parties agree that New York law applies to this diversity action. Dkt. #97, p.2; Dkt. #101, p.5.

contract executed after a plaintiff's accident may be applied retroactively where evidence establishes as a matter of law that the agreement was made prior to the accident and that the parties intended that it apply as of that date).

The party seeking reformation is subject to a burden of proof of clear and convincing evidence.  *See Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002), *citing Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992); *see also Vakilakos v. Gouvis*, 296 A.D.2d 668, 669 (3d Dep't 2002); *Koskey v. Pacific Indem. Co.*, 270 A.D.2d 461 (2d Dep't 2000); *Lent v. Cea*, 209 A.D.2d 820 (3d Dep't 1994), *lv. denied*, 86 N.Y.2d 703 (1995).  This evidentiary requirement operates as a weighty caution upon the minds of all judges, and forbids relief whenever the evidence is loose, equivocal or contradictory.  *Backer*, 46 N.Y.2d at 220.

A review of cases in which reformation was granted demonstrates the stringency with which this standard is applied.  In *Benderson v. U.S. Postal Serv*., for example, the Court granted reformation where the parties executed a contract for sale of property which included certain restrictions as to improvements on that property, but those restrictions were omitted from the deeds conveying the property to the U.S. Postal Service.  1996 WL 662624 (W.D.N.Y. Oct. 31, 1996); *see also Pacwest, Ltd. v. Resolution Trust Corp.,* 1996 WL 325647 (S.D.N.Y. June 11, 1996) (settlement statement, promissory note and security agreement reformed to comply with terms of previously executed purchase agreement), *aff'd* 108 F.3d 1370 (2d Cir. 1997); *Lent*, 209 A.D.2d 820 (granting reformation where "restrictive covenants were specifically referenced in the written contract which was freely entered into by these parties, all represented by counsel," but excluded from deed).

In *Vasilakos v. Gouvis,* the Court granted reformation where the documentary evidence and the testimony of the attorneys representing both parties established that the executed agreement, which provided that the initial rental period would end three years before the second period commenced, did not reflect the intentions of either party and was noted to be erroneous prior to the execution of the lease, but was not corrected in the executed lease. 296 A.D.2d 668 (3d Dep't 2002). Similarly, in *Orix Credit Alliance, Inc. v. Paul*, an executed guarantee obligating defendant to guaranty future transactions was reformed where the plaintiff's agent conceded that he had informed the defendant that the guaranty was limited to the current transaction. 1993 WL 78066, at *6 (S.D.N.Y. March 17, 1993). Finally, in *Koskey v. Pacific Indem. Co.*, the Court reformed an insurance policy to name trustees as insureds where the evidence demonstrated, without contradiction, that the owner of property conveyed to a trust and one of the trustees contacted the insurance brokerage firm on at least four separate occasions prior to a fire to inform it that the premises had been conveyed to a trust and were informed that the trust had been added as an insured. 270 A.D.2d 461.

In the instant case, in contrast, Mr. Capizzi avers that he was performing the demolition work at ECMC in reliance upon the proposal/contract and subsequent change orders he submitted to Cleveland Wrecking contemporaneously with the work performed. Dkt. #100, Exh. J, ¶ 11. Mr. Capizzi specifically denies receiving a specimen of Cleveland Wrecking's Subcontract Agreement or discussing indemnification of Cleveland Wrecking prior to commencement of the demolition work. Dkt. #100, Exh. J, ¶ 11.

Even if Empire Demolition was given such a specimen, the evidence is equivocal as to whether Cleveland Wrecking's representative, Mr. DeFranks, intended

to enforce, or had discretion to waive, certain provisions of that specimen.  For example, although paragraph 18 of the Subcontract Agreement requires the subcontractor to maintain minimum amounts of insurance *and* to name Cleveland Wrecking as an additional insured, the certificate of insurance does not name Cleveland Wrecking as an additional insured.  Dkt. #96, Exh. B; Dkt. #100, Exh. S.  In addition, although Mr. DeFranks testified that he contacted the insurance company to confirm the validity of the certificate of insurance, there is no evidence that he questioned the insurance company as to Cleveland Wrecking's status as an additional insured or that he was aware of the additional insured endorsement to Empire Demolition's policy.  Dkt. #100, Exh. S.  In any event, the additional insured endorsement is limited to any entity Empire Demolition was "required in a written contract . . . to name as an insured."  Dkt. #96, Exh. K.  There is no dispute that no writing obligated Empire Demolition to name Cleveland Wrecking as an additional insured at that time.

   Thus, while it is clear that the effective date of the Subcontract Agreement does not accurately reflect the date of performance of the demolition work at ECMC by Empire Demolition, Cleveland Wrecking has not met its burden of establishing an agreement by Empire Demolition to indemnify Cleveland Wrecking for any liability arising from its performance of demolition work at ECMC.  As a result, Cleveland Wrecking's motion for summary judgement on its cause of action seeking reformation of the effective date of the Subcontract Agreement is denied.  Without this reformation, there is no contractual agreement in effect as of the date of plaintiff's accident which would require Empire Demolition to defend, indemnify or procure insurance on behalf of Cleveland Wrecking.  Accordingly, Empire Demolition's motion for summary judgment dismissing the causes of action for reformation, contractual indemnification and failure to procure insurance is granted.

**Common Law Indemnification**

As a preliminary matter, the Court construes Cleveland Wrecking's Amended Third-Party Complaint to include a claim of common law, as well as contractual, indemnification. Dkt. #100, Exh. F.

Contrary to Empire Demolition's argument that New York's Workers' Compensation Law affords immunity to Empire Demolition as plaintiff's employer, it remains "well settled that an owner or general contractor who is held strictly liable under Labor Law § 240(1) is entitled to full indemnification from the party actually responsible for the incident." *Frank v. Meadowlakes Dev. Corp.*, 20 A.D.3d 874 (4th Dep't 2005) (internal quotation omitted); *see Salamone v. Wincaf*, 9 A.D.3d 127, 129, 135 (1st Dep't 2004) (article 16 of the CPLR does not limit right to indemnification by vicariously liable general contractor against negligent subcontractor), *lv. dismissed*, 4 N.Y.3d 794 (2005). However, Cleveland Wrecking's motion for summary judgment awarding common law indemnification is premature inasmuch as the allegations of negligence asserted against Cleveland Wrecking in plaintiff's amended complaint remain unresolved. *See Buccini v. 1568 Broadway Assocs.*, 250 A.D.2d 466, (1st Dep't 1998) ("Where the liability of the owner or of the general contractor is only statutory, and is not predicated on a finding of negligence, the owner or general contract is entitled to common-law indemnification by the subcontractor whose negligence caused its employee's injuries."). Accordingly, both parties are denied summary judgment with respect to the claim for common law indemnification.

## CONCLUSION

For the foregoing reasons, Cleveland Wrecking's motion for summary judgment (Dkt. #96), is **DENIED** and Empire Demolition's motion for summary judgment

(Dkt. #100), is **GRANTED** with respect to Cleveland Wrecking's claims for reformation of the contract, contractual indemnification and failure to procure insurance, and **DENIED** with respect to Cleveland Wrecking's claim for common law indemnification.

       **SO ORDERED.**

DATED:    Buffalo, New York
               October 27, 2005

                                  **S/ H. Kenneth Schroeder, Jr.**
                                  **H. KENNETH SCHROEDER, JR.**
                                  **United States Magistrate Judge**