**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CAROL PLESS,**

                                            **Plaintiff,**

**v.**

                                                                        **01-CV-0792(Sr)**

**CLEVELAND WRECKING COMPANY,**

                                            **Defendant.**

---

**DECISION AND ORDER**

        In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #33.


        Currently before the Court is defendant's motion for summary judgment dismissing plaintiff's claims pursuant to New York Labor Law § § 200 and 241(6).  Dkt. #155.  For the following reasons, defendant's motion is granted in part and denied in part.


**BACKGROUND**

        Plaintiff's amended complaint alleges that she was seriously injured following a slip, trip and fall on a makeshift walkway during the course of her employment with Empire Demolition and Development Company, Inc. ("Empire Demolition"), a subcontractor to defendant Cleveland Wrecking Company ("Cleveland Wrecking"), at approximately 9:00 a.m. on October 11, 1999.  Dkt. #87.  Plaintiff asserts that Cleveland Wrecking is liable to plaintiff pursuant to New York Labor Law § 200,

which codifies common law negligence, and New York Labor Law § 241(6), by virtue of the violation of certain Industrial Code Rules.  Dkt. #87.

**Plaintiff** testified at her deposition that she drove co-workers Joe Seneca and Carlos Robinson to ECMC in Empire Demolition's pick up truck on the morning of October 11, 1999.  Dkt. #157-2, pp. 5, 8.  Salvatore Capizzi, Empire Development's President, instructed them to stand by as he checked on the availability of the man lift or cherrypicker with Cleveland Wrecking's Regional Manager, Sam DeFranks.  Dkt. #157-2, pp.24-25, 37-38.  Plaintiff overheard their conversation, but did not speak to or receive instructions from Mr. DeFranks.  Dkt. #157-2, pp14-16, 24-25.

Mr. Capizzi instructed plaintiff and Mr. Robinson to make a wooden path for the lift to ride on top of so that it wouldn't sink as it crossed the grass to the building.  Dkt. #157-2, p.4, 8, 17-18, 26-27.  Mr. Capizzi told plaintiff and Carlos where he wanted the boards to start so that they would "be in the right position as to the best place for the machine to enter onto the grass."  Dkt. #157-2, pp.39-40.  Plaintiff clarified that

> At the beginning he was watching us to make sure that we were putting them on the spot on the circle that he wanted for us to put them at so – where the machine was going to be most level to the building that we – that the machine had to be brought to.

Dkt. #157-2, p.41.  Plaintiff also testified that Mr. Capizzi specifically instructed plaintiff and Mr. Robinson to walk across the boards that they had already laid on the ground "because he wanted them stomped down, pressed down, so that the machine didn't kick them out."  Dkt. #157-2, pp.43, 53.  Plaintiff repeated that they walked on the boards "because that pressed them down into the soil."  Dkt. #157-2, p.31.  Mr. Capizzi was standing in the circle near the pick up truck, talking on the telephone, as plaintiff and Mr. Robinson began to lay the boards.  Dkt. #157-2, pp.26, 40.

Plaintiff testified that some of the boards had been moved to ECMC on October 9, 1999, and the rest were delivered to ECMC in the pick up truck on October 11, 1999.  Dkt. #157-2, p.19.  Plaintiff described the boards as "pressure-treated . . . two-by-tens, two-by-twelves" previously used on the deck of the roof at the Buffalo Athletic Center project which had been stored on the floor in Empire Demolition's warehouse.  Dkt. #157-2, p.18, 20.  Multiple nails protruded approximately two-to-three inches through the boards.  Dkt. #157-2, p.21.  Plaintiff laid the boards with the nails facing into the ground.  Dkt. #157-2, p.22.  She recalled that the grass and boards were wet and "kind of slimy."  Dkt. #157-2, p.17.

Plaintiff stated that she and Mr. Robinson had laid approximately 15-20 boards before she was injured.  Dkt. #157-2, p.25.  They were moving three boards together – Carlos was in front of the boards facing forward and plaintiff was in back– when her "right foot slipped" forward on one of the boards they had just laid on the ground and she "completely torqued right around and my back blew out."  Dkt. #157-2, pp.27-28, 30, 34-35.  Plaintiff testified that

> the boards had nails in them and they were slimy from being
> in the shop and stuff and then being brought outside, and
> the natural elevation of the soil, the fact that it was topsoil,
> the fact that there were nails in the wood all kind of played
> into, I think, maybe creating some unevenness, and I slipped
> on the board.  And when I slipped, I just twisted to hard that I
> – the boards were in my left hand and my right hand was
> guiding them, they were all three in my right hand.  I had to
> try and save them from ripping my face apart and ripping my
> hand or my chest apart, not to mention from landing on my
> feet.

Dkt. #157-3, pp.27-28.  Plaintiff testified that Mr. Capizzi was on the telephone, with his back to her, when she slipped and injured her back.  Dkt. #157-2, pp.23,  40.

**Carlos Robinson** testified that Mr. Capizzi instructed him to construct a wooden path for the equipment to cross the ground from the roadway to the building by lying the boards side by side.  Dkt. #157-3, pp.23, 30, 33.  Mr. Robinson denied speaking with anyone from Cleveland Wrecking with respect to this project.  Dkt. #157-3, p.28.  He testified that Mr. Capizzi was "the only one" who instructed him on the job.  Dkt. #157-3, p.28.

Mr. Robinson explained that the boards were old, dirty, wet and unstable; some of them were warped and "had oil and stuff on them," and some of them contained nails.  Dkt. #163-3, pp.3-5.  They had come from Empire Demolition's warehouse, which Mr. Robinson described as "really dirty."  Dkt. #163-3, p.5.  Because some of the boards were warped and the ground was uneven in places, Mr. Robinson stated that the boards were not even and bounced in places.  Dkt. #163-3, p.6.  The boards were not secured to the ground in any way.  Dkt. #163-3, p.6.

Mr. Robinson testified that plaintiff was injured when she slipped and twisted her back while they were carrying one or two pieces of wood across the boards that they had already laid on the ground.  Dkt. #163-3, pp.3-4, 7.  He denied that plaintiff was standing on the grass at the time of her injury.  Dkt. #163-3, p.3.  Mr. Robinson testified that he had slipped a couple of times prior to plaintiff's injury.  Dkt. #157-3, p.34; Dkt. #163-3, p.4.

**Joe Seneca** testified that he received his instructions from Salvatore Capizzi on October 11, 1999 and denied receiving instructions from anyone else.  Dkt. #157-3, pp.37-38.

**Salvatore Capizzi**, Empire Demolition's President, testified that he conducted a safety meeting with his employees on the morning of October 11, 1999. Dkt. #157-2, pp.57, 67.  It was Mr. Capizzi's decision to build a path for the machinery to travel over the grass to the demolition site.  Dkt. #157-2, pp.68, 72-73; Dkt. #163-4, pp.14, 16.  He agreed that no one from Cleveland Wrecking instructed him to build the path.  Dkt. #157-2, p.68.  However, Mr. Capizzi testified that he informed Mike Fago of his plans and Mr. Fago agreed that it was a good idea.  Dkt. #157-2, p.72; Dkt. #163-4, p.15.  Specifically, Mr. Capizzi testified that, "I told him about it, he okayed it, we did it." Dkt. #157-2, p.72.  When asked if Mr. Fago told Mr. Capizzi "to do it side by side and then end on end," Mr. Capizzi testified that "[w]e looked it over, both of us looked it over, and decided it wasn't going to work."  Dkt. #157-2, pp.72-73.

Mr. Capizzi instructed plaintiff and Mr. Robinson to "start unloading the planks and put them side by side or in front of each other."  Dkt. #157-2, p.69.  Mr. Capizzi "showed them the way [he] wanted it" and "told them to make sure they were level."  Dkt. #157-2, pp.69-70.  The boards were not secured to each other.  Dkt. #163-4, p.8.  He agreed that the grass was damp.  Dkt. #163-4, p.14.  Subsequently, Mr. Capizzi instructed plaintiff and Mr. Robinson to put the boards end to end.  Dkt. #157-2, p.72.

Mr. Capizzi denied being present while plaintiff and Mr. Robinson completed the first twenty feet of the path and testified that Mike Fago was responsible for Empire Demolition's employees in his absence.  Dkt. #163-4, pp.10-12.  Mr. Capizzi testified that, as site superintendent, Mr. Fago had authority to instruct Empire Demolition's employees, but conceded that he had no knowledge as to whether Mr. Fago provided any instruction to plaintiff.  Dkt. #157-2, pp.67, 73.

**Sam DeFranks**, Cleveland Wrecking's Regional Manager, denied any direct contact with any of his subcontractor's employees. Dkt. #157-2, p.76.   Mr. DeFranks specifically denied speaking with anybody from Empire Demolition at the ECMC job site.  Dkt. #157-2, p.76.  Mr. DeFranks also denied that he ever observed the path on which plaintiff was injured.  Dkt. #157-2, p.78.  However, Mr. DeFranks did recall speaking with Mike Fago before the project commenced about the need to convey to Empire Demolition that they must either prevent or immediately repair any damage to the landscape caused by machinery.  Dkt. #157-2, pp.78-80.

**Mike Fago,** Cleveland Wrecking's site superintendent at the ECMC project, testified that he usually met with a representative of each subcontractor on a daily basis, but did not direct any of his subcontractor's employees.  Dkt. #157-3, pp.3-5, 8.   However, Mr. Fago agreed that he had the authority to stop unsafe work practices and to direct that unsafe conditions be corrected.  Dkt. #163-6, pp.1-6.  Mr. Fago informed Mr. Capizzi that he would need to re-landscape if he damaged the lawn, but did not specifically discuss with Mr. Capizzi how he planned to use the planks to protect the landscape.  Dkt. #157-3, pp.6, 9.

Plaintiff's proposed expert witness, **Ernest J. Gailor**, testified that boards commonly referred to as "two-by-tens" or "two-by-twelves," are one and one-half inches thick.  Dkt. #163-7, p.8.

## DISCUSSION AND ANALYSIS

### Summary Judgment

_____Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that

the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must

be admissible themselves or must contain evidence that will be presented in an

admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co. v. Airtemp*

*Corp*., 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be

admissible if testified to at trial may not properly be set forth in an affidavit).  _____

_____

## Common Law Negligence/Labor Law § 200

Cleveland Wrecking argues that it cannot be liable under theories of

common law negligence/Labor Law § 200 because Cleveland Wrecking did not

supervise or control plaintiff while she was laying the boards.  Dtk. #165, p.5.

Cleveland Wrecking asserts that there is no question but that Empire Demolition's

President, Salvatore Capizzi, controlled the decision to lay the boards, the selection of

the boards and the manner in which the boards were laid.  Dkt. #156, p.5.  Cleveland

Wrecking notes that Empire Demolition conceded that it made the decision to build the

walkway and that plaintiff testified at her deposition that she did not speak with anyone

at Cleveland Wrecking regarding this project.  Dkt. #156, p.5.

Plaintiff responds that there is a question of fact regarding the degree to

which Cleveland Wrecking exercised supervision or control over the construction site

and plaintiff's work on the morning of the accident.  Dkt. #164, pp.5-7.

Section 200 of New York's Labor Law "is a codification of the common-law

duty imposed upon an owner or general contractor to provide construction site workers

with a safe place to work."  *Comes v. New York State Elec. & Gas Corp*., 82 N.Y.2d

876, 877 (1993).  "An implicit precondition to this duty is that the party charged with that

responsibility have the authority to control the activity bringing about the injury." *Id.* (internal quotation omitted).  Thus, where the alleged defect or dangerous condition arises from a subcontractor's methods or materials, and the owner or general contractor exercises no supervisory control over the operation, no liability attaches to the owner or general contractor under the common law or under Labor Law § 200." *Ross v. Curtis-Palmer Hydro-Electric Co.,* 81 N.Y.2d 494, 505 (1993).

In *Comes*, plaintiff was injured after his employer directed him to lift and carry a 14-foot steel I-beam unassisted.  *Id.*  The Court of Appeals granted summary judgment to the landowner because there was "no evidence that defendant exercised supervisory control or had any input into how the steel beam was to be moved."  *Id.*  In *Cottone v. Dormitory Auth. of the State of N.Y.*, a subcontractor asked the general contractor for plywood to construct a walkway to transport rolls of sod across muddy ground.  225 A.D.2d 1032 (4th Dep't 1996).  As the subcontractor's employee walked across the plywood, it became muddy and wet, causing the employee to slip and fall. *Id.*  The Appellate Division granted the general contractor's motion for summary judgment with respect to plaintiff's cause of action pursuant to Labor Law § 200 because the "dangerous condition arose from the subcontractor's methods, and defendant did not exercise any supervisory control over those methods."  *Id.*

Similarly, in *Fisher v. WNY Bus Parts, Inc.*, the Appellate Division granted the general contractor's motion for summary judgment where the subcontractor's employee was injured when a forklift unloading steel from a flatbed trailer pinned plaintiff's foot because the the general contractor did not supervise or control the subcontractor's method of unloading steel.  12 A.D.3d 1138, 1139 (4th Dep't 2004).  The Appellate Division noted that although the general contractor "exercised general

supervisory control over the project and had the authority to correct unsafe practices, there [was] no evidence that [the general contractor] actually supervised plaintiff's actions on the day of the accident." *Id.* at 1139-40; *see also Ricotta v. Praxis Biologics, Inc.*, 265 A.D.2d 878 (4th Dep't 1999) (general contractor's authority to stop plaintiff's work if subcontractor failed to correct safety concern identified by general contractor was insufficient to raise an issue of fact whether general contractor exercised control over plaintiff's work).

In contrast, the Court of Appeals denied summary judgment to a general contractor where the landowner's employee created a diesel fuel spill which caused a subcontractor's employee to slip and fall because the general contractor's duties included coordinating work so that the landowner's employees were not engaging in potentially hazardous activities in the immediate area where the subcontractor's employees were working. *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 353 (1998).

In the instant case, there is no evidence to suggest that Cleveland Wrecking supervised plaintiff's actions on October 11, 1999. Plaintiff, Mr. Robinson and Joe Seneca each denied receiving instructions from anyone at Cleveland Wrecking. Dkt. #157-2, pp. 14-16, 24-25; Dkt. #157-3, pp.28, 37-38. Cleveland Wrecking's employees, Sam DeFranks and Mike Fago, also denied any direct contact with Empire Demolition's employees. Dkt. #157-2, p.76; Dkt. #157-3, pp. 3,5, 8.

Plaintiff, Mr. Robinson and Mr. Seneca each testified that it was Mr. Capizzi who instructed them as to their responsibilities on October 11, 1999. Dkt. #157-3, pp.37-38. Specifically, plaintiff testified that Mr. Capizzi told plaintiff and Mr.

Robinson where he wanted the boards to start so that they would "be in the right position as to the best place for the machine to enter onto the grass," and observed them as they began to lay the boards. Dkt. #157-2, pp. 4, 8, 17-18, 26-27, 39-41. Moreover, plaintiff testified that Mr. Capizzi instructed plaintiff to walk across the boards they had already laid on the ground so that they would press into the ground. Dkt. #157-2, pp. 43, 53. Mr. Capizzi agreed that it was his decision to build the path and denied that he was instructed to build the path by anyone from Cleveland Wrecking. Dkt. #157-2, pp.68, 72-73. He "showed them the way [he] wanted it" and "told them to make sure [the boards] were level." Dkt. #157-2, pp.69-70.

Mr. Capizzi's testimony that he informed Mike Fago of his plans and Mr. Fago agreed that it was a good idea to build the wooden path, as well as his testimony that he conferred with Mr. Fago and they agreed that the original method of lying the boards wasn't going to work, is insufficient to suggest supervision of plaintiff by Cleveland Wrecking. Dkt. #157-2, p.72. Similarly, Mr. Capizzi's testimony that Mike Fago was responsible for Empire Demolition's employees in his absence suggests nothing more than Cleveland Wrecking's general supervision over the work site. Dkt. #163-4, pp.11-12. Accordingly, defendant's motion for summary judgment is granted with respect to plaintiff's common law negligence/Labor Law § 200 cause of action.

**Labor Law § 241(6)**

Section 241(6) of New York's Labor Law provides that:

All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:

6.   All areas in which construction, excavation or demolition work is being performed shall be so

> constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

The New York State Court of Appeals has recognized that this statute "imposes a nondelegable duty upon an owner or general contractor to respond in damages for injuries sustained due to another party's negligence in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein." *Rizzuto*, 91 N.Y.2d at 350. Thus, Labor Law § 241(6) "imposes liability upon a general contractor *for the negligence of a subcontractor*, even in the absence of control or supervision of the worksite." *Id.* at 348-49. However, the rule or regulation alleged to have been breached must be a "specific, positive command," mandating "compliance with concrete specifications" rather than a "general safety standard" reiterating common-law standards, which would "merely incorporate into the State Industrial Code a general duty of care." *Id.* "[O]nce it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury." *Id.* at 350. "If proven, the general contractor . . . is vicariously liable without regard to his or her fault." *Id.*

### 12 N.Y.C.R.R. § 23-1.5

Cleveland Wrecking argues that 12 N.Y.C.R.R. § 23-1.5 is a general safety standard which is insufficient to support a cause of action pursuant to Labor Law

§ 241(6).  Dkt. #164, pp.7-8.  Plaintiff concedes that 12 N.Y.C.R.R. § 23-1.5 cannot

support a cause of action pursuant to Labor Law § 241(6).  Dkt. #164, p.9.  Accordingly,

defendant's motion for summary judgment is granted with respect to this aspect of

plaintiff's cause of action.


### 12 N.Y.C.R.R. § 23-1.7(d)

Cleveland Wrecking argues that the boards being laid for the machinery

were neither a passageway or a walkway.  Dtk. #156, p.10.


Plaintiff responds that there is sufficient evidence that plaintiff slipped

upon a walkway, floor or passageway and that she slipped due to the presence of a dirt,

slime, oil and water.  Dkt. #164, pp.10-13.


12 N.Y.C.R.R. §§ 23-1.7(d) provides as follows:

> Slipping hazards. Employers shall not suffer or permit any
> employee to use a floor, passageway, walkway, scaffold,
> platform or other elevated working surface which is in a
> slippery condition. Ice, snow, water, grease and any other
> foreign substance which may cause slippery footing shall be
> removed, sanded or covered to provide safe footing.

In assessing the applicability of this regulation, case law often contrasts the items

denominated within the regulation with open and common areas which are outside of

the purview of this regulation.  *See Scarupa v. Lockport Energy Assocs.,* 245 A.D.2d

1038, 1038-39 (4th Dep't 1997) (12 N.Y.C.R.R. § 23-1.7(d) inapplicable where plaintiff

fell in a common area or open yard in front of or between buildings and slipped on

muddy ground); *see also Parker v. Ariel Assocs Corp.,* 19 A.D.3d 670 (2d Dep't 2005)

(plaintiff was not using the ground floor of a building as a passageway for purposes of

12 N.Y.C.R.R. § 23-1.7(e)); *Fura v. Adam's Rib Ranch Corp.,* 15 A.D.3d 948, 949 (4th Dep't 2005) (ballroom where no one was using the area to travel from one place to another cannot constitute a passageway for purposes of 12 N.Y.C.R.R. § 23-1.7(e)); *Alvia v. Teman Elec. Contracting, Inc.*, 287 A.D.2d 421 (2d Dep't 2001) (open cement floor under construction is not a passageway for purposes of 12 N.Y.C.R.R. § 23-1.7(e)); *Lawyer v. Hoffman*, 275 A.D.2d 541, 542 (3rd Dep't 2000) (temporary gravel roadbed is not a passageway for purposes of 12 N.Y.C.R.R. § 23-1.7(e)); *Adams v. Glass Fab, Inc.*, 212 A.D.2d 972, 973 (4th Dep't 1995) (open floor area where concrete was to be poured is not a passageway for purposes of 12 N.Y.C.R.R. § 23-1.7(e)).

In *Brown v. Brause Plaza, LLC*, in contrast, the Appellate Division found triable issues of fact as to the applicability of 12 N.Y.C.R.R. § 23-1.7(d), where plaintiff slipped and fell on a stairway which was being used for transporting material related to the construction project.  19 A.D.3d 626, 629 (2d Dep't 2005).  Similarly, in the instant case, plaintiff alleges that she slipped on boards which had been laid for the purpose of transporting machinery to the building which was to be demolished.  In addition, plaintiff's testimony is that she had been instructed to walk across the boards as she continued to construct the wooden path.  Dkt. #157-2, pp.43, 53.  Although the boards themselves may have constituted an integral part of the work site, the substances causing them to become slippery did not.  *See Sweet v. Packaging Corp. of America*, 297 A.D.2d 421, 422 (3rd Dep't 2002); *Cottone*, 225 A.D.2d at 1032 ("we cannot agree that water and mud are integral parts of [plywood] walkway.").  As plaintiff has presented sufficient evidence from which a jury could conclude that the boards upon

which she slipped constituted a passageway or walkway as contemplated by the regulation and that the boards were slippery because of the presence of water, grease and other foreign substances on the boards, this aspect of Cleveland Wrecking's motion for summary judgment is denied.

12 N.Y.C.R.R. §§ 23-1.7 (e)(1) & (e)(2)

Cleveland Wrecking argues that 12 N.Y.C.R.R. §§ 23-1.7 (e)(1) & (e)(2) are inapplicable because plaintiff does not allege that she tripped.  Dkt. #156, p.9. Even if plaintiff tripped, Cleveland Wrecking argues that these regulations would be inapplicable because the boards on which she fell were an integral part of the work she was performing, *to wit*, constructing a pathway for the machinery.  Dkt. #167, p.10.

Plaintiff concedes that 12 N.Y.C.R.R. § 23-1.7(e)(1) and (e)(2) are inapplicable to plaintiff's theory that she slipped, but reserves the right to rely upon these regulations should defendant endeavor to prove that plaintiff tripped.  Dkt. #164, p.13.

Since plaintiff's testimony is that she slipped, she cannot rely upon 12 N.Y.C.R.R. § 23-1.7(e), which is concerned with tripping hazards, to support her Labor Law § 241(6) claim.  *See Ventura v. Lancet Arch, Inc.*, 5 A.D.3d 1053 (4th Dep't 2004) ("Plaintiff testified at his deposition that he slipped on the wet mortar as he attempted to move the mixer, and thus he may not contend that he tripped due to a violation of subdivision (e)").

       <u>12 N.Y.C.R.R. § 23-1.22(b)</u>

Cleveland Wrecking argues that 12 N.Y.C.R.R. § 23-1.22(b) is irrelevant, as the boards were two inches thick, as required for pedestrian traffic and there is no evidence that the thickness of the boards caused her injury.  Dkt. #156, p.8.

Plaintiff responds that this regulation is applicable inasmuch as plaintiff and Mr. Robinson both testified that the boards upon which they were walking were uneven, unstable and bouncy due to a failure to secure the boards and to utilize sufficiently thick boards.  Dkt. #164, p.15.  Moreover, plaintiff's expert testified that the boards, although commonly referred to as "two-by-tens," were actually only an inch and a half thick.  Dkt. #164, p.16.

12 N.Y.C.R.R. § 23-1.22(b) provides as follows:

(b) Runways and ramps.

(1) All runways and ramps shall be substantially constructed and securely braced and supported.  Runways and ramps constructed for use by motor trucks or heavier vehicles shall be not less than 12 feet wide for single lane traffic or 24 feet wide for two lane traffic. . . . The flooring of such runways and ramps shall be positively secured against movement and constructed of planking at least three inches thick full size or metal or equivalent strength.

(2) Runways and ramps constructed for the use of persons only shall be at least 18 inches in width and shall be constructed of planking at least two inches thick full size or metal of equivalent strength.  Such surface shall be substantially supported and braced to prevent excessive spring or deflection.  Where planking is used it shall be laid close, butt jointed and securely nailed.

(3) Runways and ramps constructed for the use of wheelbarrows, power buggies, hand carts or hand trucks

> shall be at least 48 inches in width.  Such runways and
> ramps shall be constructed of planking at least two
> inches thick full size or metal of equivalent strength.
> Such runways and ramps shall be substantially
> supported and braced to prevent excessive spring or
> deflection.  Where planking is used on such runways and
> ramps, it shall be laid close, butt jointed and securely
> nailed. . . .

The record before the Court suggests a question of fact as to the violation of this regulation.  The boards were being placed on the ground for use of construction machinery.  In addition, plaintiff's testimony is that she had been instructed to walk across the boards as she continued to construct the wooden path.  Dkt. #157-2, pp.43, 53.  Whether the appropriate thickness of the boards was at least two inches or at least three inches, plaintiff's proposed expert testified that the two by ten or two by twelve boards which were used were less than two inches thick.  Dkt. #163-7, p.8.  Moreover, the boards were not secured and were described as warped, uneven and bouncy.  Dkt. #163-3, pp.3-6; Dkt. #163-4, p.8.  Accordingly, Cleveland Wrecking's motion for summary judgment is denied with respect to this aspect of plaintiff's cause of action.


<u>12 N.Y.C.R.R. § 23-1.33(d)(2)</u>

Cleveland Wrecking argues that 12 N.Y.C.R.R. § 23-1.33(d)(2) is a general safety standard which is insufficient to support a cause of action pursuant to Labor Law § 241(6).  Dkt. #164, p.7.  In any event, Cleveland Wrecking argues that this regulation does not apply to workers on a construction site.  Dkt. #164, p.7.


Plaintiff responds that the Appellate Division, Fourth Department's most recent decision regarding this regulation establishes that 12 N.Y.C.R.R. § 23-1.33(d)(2) may support a cause of action pursuant to Labor Law § 241(6) and that this regulation is not limited to pedestrians.  Dkt. #164, pp.18-19.

12 N.Y.C.R.R. § 23-1.33 is titled, "Protection of persons passing by construction, demolition or excavation operations."  Thus, this regulation "applies to persons passing by construction operations and not to workers, such as plaintiff, on a construction site."  *Lawyer*, 275 A.D.2d at 542; *see also Mancini v. Pedra Construction*, 293 A.D.2d 453, 454 (2d Dep't 2002) ("12 NYCRR 23-1.33 does not apply to workers on a construction site.").  Accordingly, the Court need not resolve the alleged conflict as to whether 12 N.Y.C.R.R. § 23-1.33 is sufficiently specific to support a cause of action pursuant to Labor Law § 241(6).  Cleveland Wrecking's motion for summary judgment is granted with respect to this aspect of plaintiff's cause of action.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. #155), is granted in part and denied in part.  Plaintiff may proceed to trial with her cause of action pursuant to New York Labor Law § 241(6), as supported by Industrial Code Regulations 23-1.7(d) and 23-1.22(b).

Motions *in limine* are due **Monday, October 2, 2006.**  Responses are due **Monday, October 9, 2006.**  Replies are due **Friday, October 13, 2006**, at which time the motions will be taken under advisement.  Pretrial statements are due **Friday, October 13, 2006.**  Trial is set for **Monday, October 23, 2006** at 10:00 a.m.

SO ORDERED.

DATED:      Buffalo, New York
            September 18, 2006

                                    S/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-18-